# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| PAUL C. GARTH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:14-CV-1116 ERW NAB |
| ) | |
| CINDY GRIFFITH, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Paul C. Garth's Petition for Writ of Habeas Corpus. [Doc. 1.] Respondent Cindy Griffith (Respondent) filed a response. [Doc. 6.] Garth filed a Reply Brief. [Docs. 13, 14.] For the reasons set forth below, the Petition will be denied.

**I.    Background**

The state appellate court found the following facts[1]. In 2009, Garth was living with S.E., as her boyfriend. S.E. broke off their relationship after Garth wrote "I love you" on a bullet and gave it to her. On December 17, 2009, Garth sent S.E. a text message stating, "We over I will get my boxes and leave your keys." Garth went to S.E.'s house that evening and argued into the night. At approximately 2:00 a.m., the next morning, December 18, 2009, Garth went to the basement and retrieved a can of gasoline. Garth poured the gasoline on S.E., stating that if he couldn't have her, no one could. S.E. tried to run away, but Garth struck a lighter and set her on fire.

---

[1] These facts are taken directly from the Missouri Court of Appeals' decision in Garth's direct appeal. (Resp't Ex. I at 1-3) (memorandum supplementing order). A state court's determination of a factual issue made by a State court shall be presumed to be correct. 28 U.S.C. § 2254(e).

S.E. rolled on the floor to put out the fire. Garth got a bathroom rug to help put out the fire and said he was sorry and didn't think it would light. However, Garth did not call for assistance and did not render any first aid. S.E. begged Garth to take her to the hospital. Garth refused because he was afraid of going to jail. S.E. finally persuaded Garth to take her to the hospital by promising that she would tell the hospital personnel that she injured herself and that Garth did not do it. Garth took S.E. to the hospital, where S.E. stated that she tried to kill herself by pouring gasoline on herself and lighting it because her grandmother had just died. S.E. then went into shock and lost consciousness. S.E. suffered burns on her hands, arms, back, torso, neck, and face. She received skin grafts on her hand.

The next day, December 19, 2009, Garth called S.E.'s ex-mother-in-law, E.E., and told her that they had been messing with a gas can on the stove and S.E. lit a cigarette and "blew herself up." S.E. has an electric stove. S.E.'s son, C.E., heard about it and called Garth, asking him what happened. Garth told C.E. that S.E. poured kerosene on herself and lit herself on fire. C.E. asked Garth why he did not call 911 or notify family members, to which Garth responded that he had been trying to extinguish the fire and had burnt his hands. S.E.'s brother, W.J., visited S.E. at the hospital and was informed by hospital staff that S.E. had said she had done this to herself. W.J. did not believe that S.E. would do this to herself. S.E. had tubes down her throat and was unable to speak, but W.J. asked her to blink her eyes twice if somebody had done this to her and she blinked twice. W.J. then asked her to blink once if Garth had done this to her and she blinked once. Hospital personnel called the police.

At S.E.'s house, Officer Patrick Hill observed a large burn mark on the dining room carpet, burn marks on the bathroom cabinet and floor, burned clothing in the kitchen trash can, a burned bathroom rug at the bottom of the basement steps, and a gasoline can in the basement.

On December 22, 2009, after the tubes were removed from S.E.'s throat, she told Officer Hill that Garth had tried to kill her by setting her on fire. S.E. then went into cardiac arrest but survived. On January 5, 2010, S.E. was discharged from the hospital, but was still being treated regularly for her injuries at the time of the trial in November 2010. The State of Missouri charged Garth with first-degree domestic assault. Before trial, Garth decided to proceed pro se and represent himself at trial. After the State presented its case, during trial, Garth requested that counsel be provided for him. The trial court denied his request. At the conclusion of the trial, a jury found Garth guilty as charged in the indictment. The trial court sentenced Garth to life in prison.

## II. Standard of Review

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 133 S.Ct. 1911, 1917 (2013). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997).

In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision that

was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings." 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established federal law refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "In other words, clearly established federal law under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Garth*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407–408). "A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable." *Penry*, 532 U.S. at 793. "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented

4

in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evanstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

## III. Discussion

Garth presents four claims for review. In his first two claims, Garth asserts that his Sixth Amendment rights were violated when the trial court allowed him to represent himself at trial and by allowing W.J. to testify that S.E. told him through eye blinks that Garth had set her on fire. In his third claim, Garth asserts that trial court erred in allowing Dr. David Seltzer to testify that he medically treated Garth and admitted Garth's medical records. Garth asserts that the admission of his medical records and testimony of Dr. Seltzer violated the physician-patient privilege. In his fourth claim, Garth states that he received ineffective assistance of appellate counsel who failed to raise the issue that the trial court violated his right to a speedy trial.

### A. Defaulted Claims- I, II, and III

The Respondent asserts that all of Garth's claims are procedurally defaulted. Garth did not preserve claims I, II, and III for appellate review. The Missouri Court of Appeals found that Garth did not properly preserve these claims for review and reviewed them for plain error. "A federal habeas court cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." *Clark v. Bertsch*, 780 F.3d 873, 874 (8th Cir. 2015) (citing *Hayes v. Lockhart*, 766 F.2d 1247, 1253 (8th Cir. 1985)).

A state prisoner seeking federal habeas relief must first exhaust the remedies available in the courts of the state, thereby affording those courts the first opportunity to address and correct alleged violations of the prisoner's federal rights. *Walker v. Martin,* 562 U.S. 307, 315 (2011). This court is barred from reviewing Garth's claims if the state court finds that his claims are defaulted under state law, even if the state court reviewed his claims under plain error review. *Hayes*, 766 F.2d at 1252-53. The burden of justifying federal habeas relief for state prisoners is greater than the plain error showing required on direct appeal. *Id.* at 1253. The state court found that Garth did not preserve these claim for review. Therefore, Claims I, II, and III are defaulted.

To overcome the default, the petitioner must demonstrate either cause and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show cause for the default, petitioner must demonstrate that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Garth has not provided any cause for his default; therefore, these claims are not reviewable. Further, as described below, even if the Court could review Claims I, II, and III, they also fail on the merits.

### B. Merits Review of Trial Court Error in Claims I, II, and III

"In the habeas context, rules of evidence and trial procedure are usually matters of state law." *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006). "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. "A federal issue is raised only where trial errors infringe on a specific constitutional

protection or are so prejudicial as to amount to a denial of due process." *Bucklew*, 436 F.3d at 1018. In making this determination, the federal habeas court "must review the totality of the facts in the case and analyze the fairness of the particular trial under consideration." *Hobbs v. Lockhart*, 791 F.2d 125, 128 (8th Cir. 1986). "Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." *Nebinger v. Ault*, 208 F.3d 695, 697 (8th Cir. 2000).

### 1.     Claim One- Pro Se Representation at Trial

First, Garth states that his Sixth Amendment right to counsel was violated when the trial court allowed him to represent himself at trial and then denied his request for counsel after the prosecution rested its case during trial. The Sixth Amendment guarantees a defendant's right to have the assistance of counsel for his defense. U.S. Const. amend. VI. The Supreme Court has also found the Sixth Amendment implies a right of self-representation. *Faretta v. California*, 422 U.S. 806, 821 (1975). "The right to defend is personal." *Id.* at 834. In order to conduct his or her own defense, a defendant must knowingly and willingly forego the benefits of counsel. *Id.* at 835. "Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835. "A defendant who wishes to waive his right to counsel, and thereby to proceed pro se, must do so clearly and unequivocally." *U.S. v. Webster*, 84 F.3d 1056, 1062 (8th Cir. 1996). "While it has been recognized that the State may appoint standby counsel, such a determination is discretionary and not a constitutional requirement." *Moore v. Sachse*, 421 F.Supp.2d 1209, 1218 (E.D. Mo. 2006) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984)).

On May 11, 2010, Garth filed a pro se motion for change of appointed counsel citing irreconcilable conflict and difference of opinion with his appointed counsel Kelly Moyich. (Resp't Ex. D at 69-70.) On July 10, 2010, Garth filed a "Motion to Represent Myself as a Pro Se Litigant." (Resp't Ex. D at 83.) Garth stated that he wished to represent himself pro se and asked the court if it would appoint standby counsel. (Resp't Ex. D at 83.) On August 10, 2010, the trial court held a hearing on Garth's motion to proceed pro se. During the hearing, the trial court judge read from a court form titled, *Defendant's Request to Waive his Right to Proceed with the Assistance of Counsel* ("waiver form"). (Resp't Ex. D at 87.) In his testimony, Garth acknowledged that he understood the statements on the form, which explained the following: (1) offense charged, (2) range of punishment, (3) sentencing by judge if found to be a persistent offender, (4) right to trial by judge or jury, (5) right to an attorney throughout the proceedings, (6) right to appointment of counsel, if indigent, (7) if proceeding pro se, defendant bound by same rules of evidence and procedure as prosecution or any attorney, (8) the court cannot and will not function as defendant's counsel or provide legal assistance, (9) may request the assistance of counsel at any time during the proceedings despite waiver, (10) recommendations by prosecuting official are not binding on the judge, and (11) if defendant pleads guilty or is found guilty, the judge is most likely to impose a sentence of confinement. (Resp't Ex. B at 11-15, Ex. D. at 87.) Garth signed the waiver form. The trial court judge also stated that in his personal opinion, Garth representing himself would be a serious mistake and it was very likely that Garth would be convicted if he represented himself. (Resp't Ex. B at 10, 17, 19.) Garth responded that he understood. (Resp't Ex. B at 17.) In response to inquiry from the trial judge, Garth affirmed that he understood that he could be at a disadvantage if he disrupts the trial or is confused by the rules of procedure and it could hurt him in front of the jury. (Resp't Ex. B at

8

16.) He also affirmed that he understood that if trial has to be stopped to bring in counsel to represent him, that he and the attorney would be at a serious disadvantage. (Resp't Ex. B at 16.) The trial judge also told Garth, "Now I have no inclination to appoint standby counsel for you. Are you ready to proceed pro se then?" (Resp't Ex. B at 16.) Garth responded, "Yes." (Resp't Ex. B at 16.)

Garth testified that he understood that there were three phases to the trial proceedings (motions to suppress, trial, and post-trial motions), various matters and objections must be raised by proper motions before trial or objections would be lost, and it would impossible for him to negotiate a plea bargain with the prosecutor by himself. (Resp't Ex. B at 16-17.) The trial court asked Garth if he understood his responsibility to select jurors, ask potential jurors proper questions, make preemptory challenges, and object to evidence and Garth responded "Yes, sir." (Resp't Ex. B at 17-18.) Garth affirmed that he understood that his questions to witnesses had to follow the rules and if they did not, any objections by the prosecutor would be sustained. (Resp't Ex. B at 18.) The trial court asked Garth if he understood that if he is asking questions, he might say something that would influence the jury against him or suggest that he knows something that he is trying to hide." (Resp't Ex. B at 18.) Garth affirmed that he understood that he could get up to life in prison. (Resp't Ex. B at 10, 12, 18-19.) Garth denied that he had been threatened, mistreated, offered any promises or consideration, or in any way forced to act as his own lawyer. (Resp't Ex. B at 19.) Garth denied having any mental health issues, having been under the care of a psychiatrist, or having been committed for suffering from a mental disease or defect. (Resp't Ex. B at 19.) Garth affirmed that he finished the 11th grade. (Resp't Ex. B at 20.) The prosecutor asked Garth to reconsider and stated,

> Again, he has an experienced attorney. I've had cases with
> her. She knows what she is doing. We've been discussing

> this case at various times during the months leading up to the trial. I think if he fires her and goes it alone, I think he's in serious jeopardy of being convicted, and I just want it clear on the record that he still wants to go pro se even though he's not getting her as a standby counsel as well.

(Resp't Ex. B at 20.) The trial judge asked if Garth, understood the prosecutor's remarks. Garth stated, "Yeah, that's what you said. I couldn't have it so if I had a choice, I would represent myself." (Resp't Ex. B at 20.) The trial judge then found that Garth was fully informed of his right to the assistance of counsel and understood the right. (Resp't Ex. B at 20.) The trial judge found him literate[2] and mentally competent and that he knowingly, voluntarily, and intelligently waived his right to be represented by counsel in the proceeding with a full knowledge and understanding of the right and an understanding of the consequences of the effect of waiver of that right. (Resp't Ex. B at 20-21.)

Garth represented himself at two pre-trial motion hearings on October 6th and October 15, 2010. At the October 6th hearing, the trial court judge emphasized that he thought Garth was making a bad decision and asked him if he still wanted to represent himself. (Resp't Ex. B at 25-26.) (Resp't Ex. B at 26.) The trial judge told Garth that if Garth wanted an attorney, he would appoint Garth's former attorney Moyich. Garth responded that he didn't want his former attorney and if the trial judge was going to appoint the former attorney, he still wanted to proceed pro se. (Resp't Ex. B at 26.) At the October 15th hearing, the trial court judge invited the District Public Defender for St. Louis County, Stephen Reynolds. (Resp't Ex. B at 34.) The trial judge stated on the record that Reynolds had agreed to serve as co-counsel with Moyich, if Garth would like them to represent him. (Resp't Ex. B at 34.) Garth responded that he would accept Reynolds as standby-counsel or he did not want it. (Resp't Ex. Ba at 34-35.) The trial judge then stated that the offer to have Reynolds and Moyich as co-counsel was declined and he was

---

[2] The transcript states "literally," but it appears to be a transcription error.

not appointing them as standby counsel. (Resp't Ex. B at 35.) On October 27, 2017, during a pre-trial motions hearing, the judge again told Garth that he was "making a bad decision in representing yourself." On October 28, 2010, Garth's motion to appoint Reynolds and Moyich as his co-counsel was denied by the court. (Resp't Ex. E at 194-95.)

During trial, Garth represented himself during jury selection, made objections, and cross-examined several witnesses. After the State rested its case, Garth requested counsel. (Resp't Ex. C at 230.) The trial judge denied Garth's request stating that it was too late to consider appointing counsel, because the State had rested its case and Garth had received numerous opportunities to have counsel appointed. (Resp't Ex. C at 230.) Garth then presented his case with an opening statement and he called two witnesses before resting his case. (Resp't Ex. C at 230-54.) Garth also presented a short closing argument. (Resp't Ex. C at 273-74.)

Garth contends that the waiver of his right to counsel was not knowing, voluntary, and intelligent, because he was not advised of possible defenses or that he would not be able to claim ineffective assistance of counsel if he proceeded. The Missouri Court of Appeals found that the record supports that Garth knowingly and intelligently waived his right to counsel and chose to proceed pro se. (Resp't Ex. I at 17.) The court of appeals found that Garth was extensively questioned regarding his waiver of counsel and given several combinations of attorney representation, which he declined. (Resp't Ex. I at 17.) The court of appeals also found that the trial court was not obligated to provide Garth detailed advice regarding possible defenses or appoint counsel halfway through the trial. (Resp't Ex. I at 17.)

Based on a review of the proceedings in the state court, the Court finds that Garth's habeas claim must be denied. The extensive and multiple conversations regarding his waiver of the right to counsel negates the claim that he did not knowingly and intelligently waive his

rights. The Supreme Court has never "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *See Iowa v. Tovar*, 541 U.S. 77, 88 (2004). "[In] a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel." *Id.* at 92. Garth has not met that burden for several reasons. First, there is no established Supreme Court precedent that a defendant must be informed that waiving counsel would prevent him from knowing about possible defenses. *Tovar*, 541 U.S. at 91-94. Next, Garth has failed to provide evidence of established U.S. Supreme Court precedent that he had a federal constitutional right to standby counsel. In fact, the Supreme Court has explained that *Faretta* does not require a trial judge to "permit 'hybrid' representation" of the type that Garth was seeking. *McKaskle*, 465 U.S. at 183. Next, there is no constitutional right to appointed counsel of his choosing. "It is well established that a defendant does not have the absolute right to the counsel of his choice." *United States v. Rodriguez*, 612 F.3d 1049, 1054 (8th Cir. 2010) (citing *United States v. Mentzos,* 462 F.3d 830, 839 (8th Cir.2006) (defendant's decision to represent himself was not rendered involuntary simply because the court required him to choose between qualified counsel and self-representation)). Finally, a pro se defendant does not have the right to appointment of counsel starting in the middle of a trial. "Last minute requests to substitute defense counsel are not favored." *United States v. Webster*, 84 F.3d 1056, 1062 (8th Cir. 1996) (citing *United States v. Klein*, 13 F.3d 1182, 1185, *cert. denied*, 52 U.S. 1226 (1994)); *see also Rodriguez*, 612 F.3d at 1054 (last-minute requests to substitute counsel such as occurred here remain disfavored). Therefore, Garth's claim will be denied as defaulted and failed on the merits.

## 2. Claim 2- Admission of Testimony regarding Eye Blinking

Next, Garth states that the trial court erred in the admission of W.J.'s testimony regarding S.E. telling him through a series of eye blinks that Garth had set her on fire. Garth states that the evidence was hearsay and violated his right to confront the witnesses against him. "The Sixth Amendment guarantees a criminal defendant the right to confront witnesses against him." *Lam v. Iowa*, 860 F.2d 873, 875 (8th Cir. 1988) (citing *Mancusi v. Stubbs*, 408 U.S. 204, 216 (1972)). The Missouri Court of Appeals found that the eye blinking evidence was cumulative and because Garth had the opportunity to cross examine W.J. and S.E. at trial, there was no prejudice to admission of W.J.'s testimony. (Resp't Ex. I at 19-21.) The Court agrees. The admission of this evidence, even if error under state law, does not rise to the level of a federal constitutional violation." *Nebinger*, 208 F.3d at 697. The most prominent reason being Garth was not prejudiced by the testimony. There was no confrontation clause issue because W.J. and S.E. testified at trial. Garth questioned W.J. on cross-examination and asked if S.E. was responding to W.J. or the medication[3]. (Resp't Ex. A at 163-64.) On direct examination S.E. testified that she did not remember blinking her eyes in response to W.J.'s questions. (Resp't Ex. A at 132.) Garth also extensively cross-examined S.E. and failed to question her about the eye blinking. Admission of W.J.'s testimony regarding the eye blinking did not prejudice Garth or result in the denial of due process. Therefore, Garth's claim will be denied as defaulted and failed on the merits.

---

[3] Garth does not mention eye-blinking specifically, but because W.J.'s testimony substantially involved the eye blinking evidence, the Court infers that is what he is referring to in his cross-examination.

### 3. Claim 3-Admission of Garth's Medical Records

Then, Garth contends that the admission of his medical records violated physician-patient privilege. At trial, the trial judge allowed Dr. David Seltzer to testify. (Resp't Ex C at 186-200.) Dr. Seltzer treated Garth in the emergency room for burns on December 18, 2009. Dr. Seltzer described Garth's second degree burns on his hands and singed hair on his face. (Resp't Ex. C at 188-89.) Dr. Seltzer testified that Garth told him that he received the burns lighting a furnace. (Resp't Ex. C at 189.) Garth did not object to Dr. Seltzer testifying or the admission of his emergency room medical records. (Resp't Ex. C at 186, 191.)

Missouri state law recognizes a physician-patient privilege that states that physicians are incompetent to testify concerning any information acquired from any patient while attending to the patient in a professional character. Mo. Rev. Stat. § 491.060(5). The Missouri Court of Appeals found that Garth waived the privilege, because Garth failed to object to the admission of Dr. Seltzer's testimony or the admission of medical records. (Resp't Ex. I at 22.) Further, the court of appeals found that Garth made no showing that the results of the trial would have been different had Dr. Seltzer's testimony and the corresponding medical records been excluded. (Resp't Ex. I at 22-23.)

Because this issue involves the review of a state court's interpretation of its own law, Garth must show infringement on a specific constitutional protection that is so prejudicial as to amount to a denial of due process. *Bucklew*, 436 F.3d at 1018. Garth has not met that burden. Garth has not shown there is federal constitutional recognition of a right to physician-patient privilege. Therefore, Garth's claim is not cognizable under § 2254. Further, there was an overwhelming amount of evidence to support Garth's conviction without the admission of his

medical records and Dr. Seltzer's testimony. The Court will deny this claim as defaulted and failed on the merits.

C. **Defaulted Claim 4- Direct Appeal and Post-Conviction Representation**

Finally, Garth asserts that direct appeal counsel and post-conviction counsel were ineffective for failure to raise the issue that the trial court violated his right to a speedy trial. Garth admits that he never brought his fourth claim on post-conviction review. Therefore, there is no dispute that this claim is defaulted. "Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and undercuts the State's ability to enforce its procedural rules." *Murray v. Carrier,* 477 U.S. 478, 491 (1986). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred." *Coleman,* 501 U.S. at 750. To overcome the default, a defendant must demonstrate either cause and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. *Id.*

To show cause for the default, defendant must demonstrate that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. *Murray,* 477 U.S. at 488. For example, a defendant could demonstrate that the factual or legal basis for a claim was not reasonably available to counsel or some interference by officials made compliance impracticable. *Id* at 488. While ineffective assistance of counsel constitutes cause for a procedural default, the exhaustion doctrine generally requires that an ineffective assistance claim be presented to the state courts as an independent claim before it may be used to establish cause of a procedural default in federal habeas proceedings. *Id.* at 489. An ineffective assistance of counsel claim asserted as cause for the procedural default of another claim can itself be

15

procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000). This procedural default may be excused if the prisoner can then satisfy the cause-and-prejudice standard with respect to that claim. *Id.*

Section 2254(i) provides that "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). The Supreme Court has recognized a limited exception to this rule. In *Martinez v. Ryan*, the Supreme Court held:

> Where under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial, if in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez v. Ryan,* 132 S.Ct. 1309, 1320 (2012). The Eighth Circuit has held that *Martinez* does not stand for the proposition that the failure to preserve claims on appeal from a post-conviction proceeding can constitute cause. *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (citing *Martinez*, 132 S.Ct. at 1320) (holding does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings).

### 1. Direct appeal counsel

First, the Court will address Garth's claims against direct appeals counsel. "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "An accused is entitled to be assisted by an attorney, whether retained or appointed who plays the role necessary to ensure that the trial is fair." *Id*. To succeed in a claim "that counsel's assistance was so defective as to require reversal

of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Strickland*, 466 U.S. at 687-88.

The Sixth Amendment includes a guarantee to the right of effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Garth must satisfy both prongs of the *Strickland* test to prevail on his claim of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). Therefore, Garth must show that the appellate attorney's performance was below the reasonable standard of competence and that there is a reasonable probability that the result would have been different absent the attorney's deficient performance. *Gee v. Groose*, 110 F.3d 1346, 1352 (8th Cir. 1997). "Reasonable appellate strategy requires an attorney to limit the appeal to those issues counsel determines have the highest likelihood of success." *Gee*, 110 F.3d at 1352. "Importantly, if an issue an appellate attorney failed to raise on appeal is not meritorious, then appellate counsel cannot be considered ineffective for having failed to argue that meritless issue on appeal." *Kerns v. Bowersox*, No. 4:06-CV-1755 TCM, 2010 WL 1049841 at *13 (E.D. Mo. Mar. 18, 2010).

The United States Constitution guarantees that "the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Missouri's speedy trial provision states, "If defendant announces that he is ready for trial, then the court shall set the case for trial as soon as reasonably thereafter." Mo. Rev. Stat. § 545.780(1).

The State issued a complaint against Garth on December 29, 2009 (Resp't Ex. D at 14-15.) A grand jury indicted Garth on February 3, 2010. (Resp't Ex. D at 16-17.) Although still represented by counsel, Garth filed requests for speedy trial on February 18, 2010 and March 1, 2010. (Resp't Ex. D at 23, 42.) On July 12, 2010, Garth filed a Motion to Dismiss Charges for

17

violation of the Speedy Trial Act. (Resp't Ex. D at 85-86.) The Court granted Garth's Motion to Proceed Pro Se on August 10, 2010. Garth filed another Motion to Dismiss Charges for violation of the speedy trial act on August 10, 2010. (Resp't Ex. D at 93-95.) On September 24, 2010, Garth filed an "Affidavit to Dismiss for Violation of Statutory and Constitutional Right to Speedy Trial." (Resp't Ex. D at 109-111.) The trial court denied Garth's motions stating, "That has been denied. Speedy trial, I have denied this and I'm going to deny it again." (Resp't Ex. B at 44.) The trial judge stated that the trial date was set for November 8, 2010, because it was compatible with the court's schedule and the schedule of counsel. (Resp't Ex. B at 43.)

As an initial matter, "violation by state officials of a state speedy trial law, taken alone, does not present a federal claim reviewable on habeas petition." *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994). "A separate showing that the Sixth Amendment speedy trial requirement has been violated must be made before habeas relief will be granted." *Id.* Therefore, this Court will determine whether (1) there was a meritorious claim for relief under the Sixth Amendment's right to a speedy trial and (2) whether direct appeal counsel's failure to bring that claim fell below the reasonable standard of competence and that there is a reasonable probability that the result would have been different absent the attorney's deficient performance. The Court will not review the claim based on violation of Missouri's speedy trial statute.

Based on a review of the evidence below, the Court finds that Garth's ineffective assistance of direct appeal counsel claim fails on the merits. "The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times, in opposition to, the interests of the accused." *Barker v. Wingo*, 407

U.S. 514, 519 (1972). It is "impossible to determine with precision when the right has been violated. [The Court] cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate." *Id.* at 521. The Supreme Court has adopted a four factor balancing test when evaluating whether a Sixth Amendment speedy trial violation has occurred: (1) length of delay, (2) reason for delay, (3) defendant's assertion of his speedy trial right, and (4) prejudice to the defendant. *Id.* at 530. "Prejudice, of course, should be assessed in light of the interests of defendants which the speedy trial right was designed to protect." *Id.* at 532. These interests include (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Id.*

In this case, Garth alleges that the delay was "directly responsible" for his "inability to present an alibi defense" and "inability to adduce crucial material for impeachment of the State's main witness." Garth has not provided any support for his assertions that he suffered prejudice as a result of the trial being held eleven months after the complaint was issued. Garth asserted his right to a speedy trial numerous times before trial, but failed to assert that any delay was impeding his ability to present a defense. The length of delay (eleven months), reason for delay (court and counsel schedule), and lack of prejudice to the defendant all weigh in favor of finding no Sixth Amendment violation. The speedy trial claim lacked merit; therefore, the Court finds that Garth has failed to show ineffective assistance of direct appeal counsel for failure to bring a Sixth Amendment speedy trial claim.

### 2. Post-Conviction Counsel

Because the Court has found that Garth's underlying Sixth Amendment speedy trial claim lacked merit, he cannot assert a claim for ineffective assistance of initial post-conviction counsel for failing to assert an ineffective assistance of appeal counsel claim.

**IV.	Conclusion**

For the reasons set forth above, Garth's claims for relief will be denied. The state court's findings and conclusions regarding Garth's claims were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Because Garth has made no showing of a denial of a constitutional right, the undersigned does not recommend that a certificate of appealability be issued in this matter. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED**. [Doc 1.]

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a Certificate of Appealability is **DENIED**.

Dated this 26th Day of September, 2017.

　　　　　　　　　　　　　　　　　*/s/ E. Richard Webber*
　　　　　　　　　　　　　　　　　E. RICHARD WEBBER
　　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE